USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 1 9 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IQBAL N. SULEHRIA,

            Plaintiff,

—v—

THE STATE OF NEW YORK et al.,

            Defendants.

---

13-cv-6990 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Iqbal N. Sulehria, proceeding *pro se*, brings this action against the State of New York and two of its employees in their individual and official capacities. He alleges that Defendants discriminated against him based on his age, race, creed, color, religion, national origin, and sex when they failed to hire him to a civil service position with the State of New York, in violation of 42 U.S.C. § 1981; 42 U.S.C. § 1985; Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 2000d *et seq.*; Title VII of the Civil Right Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; New York General Business Law § 349; New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; and New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq.* He also brings a state-law claim for fraud.

    Defendants move to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. For the reasons stated herein, Defendants' motion is GRANTED.

    **I.    Background**

    For the purposes of this motion, the Court accepts as true the factual allegations in the Complaint. Plaintiff is a forty-nine year old male who was born in Pakistan, and became a

1

United States citizen in 1999 after arriving in the country in 1993. Compl. ¶ 8. He obtained an LL.B. degree while still in Pakistan, and has since earned an LL.M. degree from Touro Law Center on Long Island, NY. *Id.* In November 2011, he applied for an Attorney Trainee position with the New York Civil Service, and took the required Legal Specialties placement examination at the direction of Defendant Marion Ebli. *Id.* ¶¶ 14-15. The Legal Specialties exam consists of an "education and experiences" questionnaire, which is then used to evaluate which candidates meet an agency's needs when it has a vacancy. *Id.* Ex. A (Dkt. No. 2 at 39). Candidates are rated differently for different vacancies, because scores are matched to the requirements of the position to be filled. *Id.* Under New York law, agencies are required to hire from the three highest-scoring individuals on the relevant civil service examination when a vacant position opens up, subject to certain allowances made for veterans and employees already in the civil service. *See* N.Y. Civ. Serv. Law §§ 61(1), 81. A candidate who takes the Legal Specialties exam remains eligible to be considered for legal positions in the civil service for one year. *See* Compl. Exs. A & E (Dkt. Nos. 2 at 39, 2-2 at 48).

Whenever an agency has a vacancy, the Department of Civil Service generates a list known as a "LERT" that indicates candidates' scores on the Legal Specialties exam relative to the needs of the position. *Id.* ¶¶ 21-22. Plaintiff appeared on nine LERTs during his eligibility period. *Id.* ¶ 21. In August 2012, Plaintiff received a "canvass letter" in connection with one of those LERTS, for a position in the Division of Housing and Community Renewal. *Id.* ¶¶ 17, 21 & Ex. D (Dkt. No. 2-2 at 45). The letter indicated that Plaintiff's name appeared on the "eligible list" for a position in the Tenant Protection Unit, and directed Plaintiff to return the letter and a resume within two weeks if he was interested in the position. *Id.* Ex. D (Dkt. No. 2-2 at 45). Plaintiff did so, but was not subsequently contacted for an interview. *Id.* ¶ 17.

2

In May 2013, Plaintiff was told by an unnamed employee of the State of New York that he "should have been called for an interview" if he was on the eligible list for the Housing and Community Renewal Job. *Id.* ¶ 18. That same day, he called the Department of Civil Service and spoke with Defendant Marion Ebli, who declined to give Plaintiff a list of candidates who "passed the test" for the position, explaining that no list is created until an agency requests one to fill an open position, and directions about specific lists must be directed to the hiring agency. *Id.* ¶ 19 & Ex. E (Dkt. No. 2-2 at 48). She did, however, provide Plaintiff with a list of his scores on LERTs that were generated during his eligibility period, and reminded him that over one year had passed since he took the Legal Specialties examination—meaning he had to take the exam again to be eligibile under the one-year rule. *Id.* Ex. E (Dkt. No. 2-2 at 48). Five days after his phone conversation with Defendant Ebli, Plaintiff spoke with Defendant Sev Moro on the phone, who told Plaintiff that he "will not be hired," and when asked about reapplying, told Plaintiff, "Do not bother again." *Id.* ¶ 20.

Plaintiff alleges that the test procedure for the Legal Specialties examination is biased against Asian-American candidates, and sets them up to score low on the LERTs on which he appeared. *Id.* ¶ 22. He claims that other individuals scored higher because they had J.D. degrees instead of an LL.M. degree, which he describes as a higher level of education, and that these individuals were "less qualified, less experienced, and less competent" than he was. *Id.* ¶¶ 23, 26, 37. He further claims that he would have had the highest score on the Legal Specialties examination if the State used "fair methods for testing." *Id.* ¶ 53. At the same time, he alleges that he scored higher than other applicants for two job openings with the Department of Labor, but was not offered the job for "discriminatory reasons." *Id.* ¶ 29. All of the positions for which

he was eligible, he says, were eventually filled by less-qualified females,[1] *id.* ¶ 30, or by less-qualified males with "religions, colors, ancestries, [and] national origins" outside of his protected class, *id.* ¶¶ 31, 33, and in part by less-qualified individuals who were under forty years old, *id.* ¶ 32. He was denied the position, he states, because he is a male over 48 years old, is of Pakistani origin, is an Asian-American of dark complexion, and is a practicing Muslim. *Id.* ¶ 36.

With regard to Defendants Ebli and Moro, Plaintiff claims that they were "personally involved and directly participated" in denying him a job. Compl. ¶ 34. He also alleges that they created a "policy or custom" of "unconstitutional practices," and that they were grossly negligent in managing subordinates. *Id.* Ebli, he says, is a Senior Staffing Representative, and therefore responsible for "day-to-day hiring" and supervision of New York State employees. *Id.* ¶ 10. Moro is similarly alleged to be responsible for hiring employees for New York State. *Id.* ¶ 11.

Plaintiff brings fifteen claims based on the failure to hire him to a vacant legal position. These include violations of 42 U.S.C. § 1981; 42 U.S.C. § 1985; Title VI, Title VII, the ADEA, New York General Business Law § 349; New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; and New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq.* He also brings a state-law fraud claim, claims entitled "Pattern and Practice" and "Disparate Treatment/Impact," and claims for a declaratory judgment under 28 U.S.C. §§ 2201 & 2202 and N.Y. C.P.L.R. 3001.

## II.   Legal Standard

When evaluating a motion to dismiss, a court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *See Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, a court is "not bound to accept as true a legal

---

[1] Plaintiff further alleges that females are "systematically hired, trained, promoted, and given preferential treatment over males" by the State of New York. Compl. ¶ 30.

4

conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

In addition to the allegations in the complaint, a court may consider documents attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit, as well as any judicially noticeable matters. *See Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011); *In re Harbinger Capital Partners Funds Investor Litig.*, No. 12 Civ. 1244 (AJN), 2013 WL 5441754, at *15 n.6 (S.D.N.Y. Sept. 30, 2013). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (quoting *Poindexter v. EMI Record Grp. Inc.*, No. 11-v-559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)).

Courts are to give "special solicitude" to *pro se* litigants by construing liberally the allegations in the complaint, particularly in civil rights suits. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). However, lawyers representing themselves *pro se* ordinarily do not receive this same solicitude because of their familiarity with the procedural and substantive requirements of litigation. *Id.* Defendants argue that Plaintiff, despite proceeding *pro se*, should not be given the benefit of liberal construction of his pleadings because of his legal training, which indeed Plaintiff refers to repeatedly throughout the Complaint. *See, e.g.*, Compl. ¶ 27. Ultimately, the issue need not be decided, because the motion to dismiss should be granted even

if Plaintiff's allegations are given the special solicitude normally granted to a *pro se* plaintiff without legal training.

### III.     Eleventh Amendment

The Eleventh Amendment bars suits against a state brought by a private citizen in federal court unless the state consents, or Congress has abrogated the state's sovereign immunity with regard to the specific claim at issue. *See* U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). The Amendment also bars suits for damages against state officials in their official capacities, because the state is the "real party in interest" in an official-capacity suit. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 169 (1985); *accord Papasan v. Allain*, 478 U.S. 265, 278 (suits for primarily retrospective relief barred when defendant is state official sued in official capacity). Eleventh Amendment immunity is a jurisdictional bar. *See Edelman v. Jordan*, 415 U.S. 651, 677-78 (1974); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72-73 (1996).

Congress has abrogated the states' sovereign immunity under Title VII, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-48 (1976), and Title VI, *see Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). The ADEA, however, does not abrogate the states' sovereign immunity. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 92 (2000). Moreover, the State of New York has not consented to be sued in federal court under its state Civil Rights and Business Laws and New York City's Civil Rights Laws, so such claims are barred by the Eleventh Amendment as well. *See Pennhurst*, 465 U.S. at 99; *see also Sulehria v. New York*, No. 12-cv-21 (LEK/ATB), 2012 U.S. Dist. LEXIS 148666, at *4 (N.D.N.Y. Sept. 17, 2012); *Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009).[2]

---

[2] Plaintiff brings his claims under 42 U.S.C. §§ 1981 & 1985 only against the individual defendants, Ebli and Moro. *See* Compl. ¶¶ 63-66. The Court understands this to mean that he raises these claims against them only

Accordingly, with the exception of Plaintiff's claims under Titles VI and VII, the Court is without jurisdiction to hear all of Plaintiff's claims against the State of New York and Defendants Ebli and Moro in their official capacities. Those claims are dismissed.

### IV.   Timeliness

As a prerequisite to filing a lawsuit under Title VII,[3] a plaintiff must first file a timely complaint with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(f)(1); *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). To be timely, the charge must be filed within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1).

According to the Complaint, Plaintiff filed an EEOC charge on July 1, 2013. Compl. ¶ 6(A). This would mean a timely charge would include events occurring on or after January 2, 2013. However, all of the employment-related events underlying Plaintiff's allegations took place before that date. He took the Legal Specialties test in November 2011, *id.* ¶ 14, received the canvass letter for the position at the Department of Housing and Community Renewal in August 2012, *id.* ¶ 17, and became ineligible for further consideration for a civil service position without retaking the Legal Specialties examination in November 2012. Even if his theory is

---

in their individual capacities. To the extent these claims are meant to be against the individual defendants in their official capacities, they would be barred by the Eleventh Amendment. The State has not waived and the United States has not abrogated the states' sovereign immunity under 42 U.S.C. §§ 1981 & 1985. *See Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013) (§ 1985); *Wang v. Office of Prof'l Med. Conduct, N.Y.*, 354 F. App'x 459, 460 (2d Cir. 2009) (§ 1981).

[3] Plaintiff's Title VII claim was brought only against the State of New York. *See* Compl. ¶ 67. Individual defendants are not liable under Title VII. *See Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009). Title VI also does not subject individual defendants to liability, because they are not the recipients of federal funds. *See, e.g., Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 408-09 (S.D.N.Y. 2013); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007); *Kelly v. Rice*, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005). The ADEA similarly does not make individuals liable. *See Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011). To the extent Plaintiff intended to plead Title VI and ADEA claims against the individual defendants, they are dismissed.

construed as a continuous failure to hire for the entire period of his eligibility, all of the adverse employment actions took place more than 180 days before Plaintiff filed his EEOC charge.

Some of Plaintiff's allegations in the Complaint relate to phone conversations he had with Defendants Ebli and Moro in May 2013. *See id.* ¶¶ 18-20. However, nothing about the content of those alleged conversations forms the basis of an employment discrimination charge. As Plaintiff himself admits, he "filed his EEOC complaint with the EEOC within *300 days*." Pl. Mem. in Opp. at 4 (Dkt. No. 20) (emphasis added). The 300-day period would apply if Plaintiff had first sought relief from a state or local agency, *see* 42 U.S.C. § 20003-5(e)(1), but neither the Complaint nor the attached exhibits contain any indication that he did so. Plaintiff's Title VII claims must be dismissed as untimely.

### V.  Failure to State a Claim

After applying the jurisdictional and timeliness bars, what remain are a Title VI claim against the State of New York and several claims against Defendants Ebli and Moro in their individual capacities: claims under 42 U.S.C. §§ 1981 & 1985; claims denominated as being under the "Civil Rights Act of 1991," as "Pattern and Practice," and as "Disparate Treatment/Impact"; claims for declaratory relief under state and federal law; New York State and City Human Rights Law claims; fraud; and a claim under New York General Business Law § 349.

Several of these putative claims can be dismissed because they are not claims at all. "Pattern or practice" and "disparate impact" are theories of liability under Title VII, not separate claims. Declaratory relief, meanwhile, is a form of relief (as the name suggests), not an independent claim. The Civil Rights Act of 1991 made amendments to several civil rights

statutes, including 42 U.S.C. § 1981, but did not create any new statutory causes of action. These "claims" are therefore encompassed within claims Plaintiff has otherwise pleaded.

### A. Title VI

Title VI prohibits "any program or activity receiving Federal financial assistance" from excluding or otherwise discriminating against any individual on the basis of race, color, or national origin. 42 U.S.C. § 2000d. A violation of Title VI is demonstrated only by proof of intentional discrimination. *See Guardians Ass'n v. Civil Serv. Comm'n of the City of N.Y.*, 463 U.S. 582, 584 (1983).[4] To state a claim under Title VI, a plaintiff must plausibly allege not only that the defendant was an entity receiving federal funding and engaged in intentional discrimination based on the plaintiff's race, color, or national origin, but also that the federal funds have been made available primarily for providing employment. *Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981). A "naked allegation" that a plaintiff was treated differently from individuals outside of the protected class is "too conclusory" to survive a motion to dismiss. *Kajoshaj v. N.Y.C. Dep't of Ed.*, 543 F. App'x 11, 14 (2d Cir. 2013) (citing *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988)).

Plaintiff alleges that New York State and the Department of Civil Service receive federal funds. Compl. ¶ 50. However, his allegations of a Title VI violation are deficient in several other respects, most notably that all of the allegations of intentional discrimination are entirely conclusory, and lead to no direct or circumstantial inferences of discrimination. He states that defendants did not hire him "for illegal discriminatory reasons," *id.* ¶ 29, and that the Defendants discriminated against him on the basis of his race, color, and national origin, *id.* ¶ 36. He further alleges that the intentional discrimination may be inferred because of a "custom or practice" of

---

[4] Although agencies can promulgate regulations prohibiting disparate impact under Title VI, there is no private right of action to enforce these regulations. *See Alexander v. Sandoval*, 532 U.S. 275, 293 (2001).

9

discrimination on these bases. *Id.* ¶ 43. However, these allegations are merely restatements of the matters one must prove to state a discrimination claim; they do not plausibly state any facts that would tend to show discrimination.

Plaintiff's allegations that individuals outside of his protected class were ultimately hired to the positions do not, standing alone, state a claim of intentional discrimination either. Except for the conclusory allegation that he was "better qualified" than the individuals who received the jobs, Compl. ¶ 27, Plaintiff offers no facts to show that the reason he was passed over was because of his race, color, or national origin. Moreover, Plaintiff's conclusion that he was "better qualified" rests entirely on his possession of an LL.M. degree rather than a J.D. This claim is not plausible on its face; an LL.M. degree is not a facially better qualification than a J.D. for the positions Plaintiff was seeking, and the type of degree represents just one of many factors that an employer legitimately could consider. Plaintiff references none of these other legitimate considerations.

Because Plaintiff's allegations of intentional discrimination are conclusory and not otherwise plausible, his Title VI claim must be dismissed.

### B. 42 U.S.C. §§ 1981 & 1985

Plaintiff's claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1985 are against Defendants Ebli and Moro in their individual capacities. Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Section 1985, meanwhile, provides a cause of action against individuals who conspire to deprive another of her civil rights. 42 U.S.C. § 1985.

To state a violation of § 1981, a Plaintiff must show that a defendant's individual actions are causally related to the discriminatory action alleged. *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004). However, Plaintiff does not plead any facts raising an inference of discrimination on the part of Ebli or Moro. His only allegations as to Ebli are that she directed Plaintiff to complete the testing process if he wanted to secure a job with the New York civil service, Compl. ¶ 15, and that she spoke with Plaintiff on the phone but did not provide him with an "eligible list," although she did provide his candidate history by mail, *id.* ¶ 19. The letter Ebli wrote to Plaintiff, which is attached to the Complaint, explains that there is no standing "eligible list" to send, that individual lists generated for vacancies are sent to the hiring agency, and that Plaintiff should contact the relevant agency if he had questions about his candidacy. *Id.* Ex. E (Dkt. No. 2-2 at 48). These allegations do not state a claim that Ebli was involved in any discrimination against Plaintiff, or indeed that she had any decision-making function with regard to his application at all.

Plaintiff's sole allegation with respect to Moro is that, when they spoke on the phone, Moro informed Plaintiff that he would not be hired, and not to "bother again" with reapplying. Compl. ¶ 20. That a state official told someone they would not be hired, and were unlikely to be hired in the future, does not raise an inference that the reason was discriminatory. This single allegation does not state a claim of discrimination by Moro against Plaintiff.

For similar reasons, Plaintiff's allegations fail to state a claim against either Ebli or Moro under 42 U.S.C. § 1985. Among other things, that statute requires proof of a conspiracy with a "meeting of the minds." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Plaintiff has not alleged, and no plausible inference can be drawn from the Complaint, that either Ebli or Moro

agreed with any other individual to discriminate against Plaintiff. Accordingly, Plaintiff's claims under 42 U.S.C. §§ 1981 & 1985 must be dismissed.

### C. New York State and City Human Rights Laws

Plaintiff's failure to allege any actions giving rise to an inference of discrimination by Ebli and Moro also dooms his claims under the New York State and City Human Rights Law, N.Y. Exec. Law § 290 *et seq.* and N.Y.C. Admin Code § 8-101 *et seq.* Even assuming they could qualify as "employers" for the purposes of these laws—which is dubious—there is simply no allegation that Defendants' actions were discriminatory on the basis of any protected classification. None of Ebli's interactions with Plaintiff concerned hiring, and Moro merely informed Plaintiff that he would not be fired by his department. This does not state a claim for discrimination under these laws.

### D. Fraud

To state a claim for fraud in New York, a Plaintiff must show "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). Plaintiff does not allege that Ebli or Moro made any false statements, so he has failed to state a claim on the first element. He alleges that the State of New York sent him a letter with a false statement, but the State is immune under the Eleventh Amendment. Plaintiff's fraud claim must therefore be dismissed.

### E. N.Y. Gen. Bus. Law § 349

Section 349 of the New York General Business Law is a consumer protection statute. "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material

12

way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995)). Plaintiff did not stand in the relationship of a consumer to any Defendant, nor has he alleged any material false statements. He has therefore failed to state a cause of action on this claim.

### VI. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's action is dismissed with prejudice.

This resolves Docket No. 12. The Clerk is requested to terminate the case.

SO ORDERED.

Dated: Sept. \_\_19\_\_, 2014
New York, New York

_____
ALISON J. NATHAN
United States District Judge